# EXHIBIT B

# COMPLAINT TO TRANS UNION, LLC

| | |
|---|---|
| **STATE OF MINNESOTA**<br>**County of Hennepin** | **DISTRICT COURT**<br>Judicial District: Fourth<br>Case Type: Civil Other/Misc. |

Case No: _____

Jason McKinley,
*Plaintiff*

vs.

Equifax Information Services, Inc., Trans Union LLC, Barclays Bank Inc.
*Defendants*

# COMPLAINT

Plaintiff, by and through his attorneys, for his Complaint against Defendants upon personal knowledge as to his own facts and conduct and on information and belief as to all other matters, states and alleges as follows:

**Nature of the Case and Defendants' Unlawful Business Practices**

1. Mr. McKinley's experience with Defendants is typical of those of too many American consumers. Mr. McKinley is presently seeking to buy a home only to be told that Defendant Barclays has furnished to the Defendant consumer reporting agencies ("CRAs") negative information about him regarding an account for which Mr. McKinley had no prior knowledge, did not authorize, and is not responsible for in any way. The Defendant CRAs have in turn reported that Mr. McKinley recently defaulted on a credit

1

card issued by Barclays and that as a result of this data Mr. McKinley is a substantial credit risk and potential lenders should avoid.

2. Like untold numbers of individuals in similar circumstances, upon discovery of the false information on his report, Mr. McKinley acted promptly to correct the information by submitting a request for reinvestigation both to the furnisher and to each of the CRAs pursuant to his rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq.

3. After submitting his disputes to the defendant CRAs, the companies transmitted word of his disputes to Defendant Barclays, which responded to the CRAs informing them the false information was verified as accurate.

4. The Defendant CRAs in turn made no effort to substantiate the information and instead parroted the response of Barclays and thereafter informing Mr. McKinley that the information was verified as accurate and would continue to be reported to potential creditors.

5. In fact, the CRAs continued to report the false information to all of Mr. McKinley's potential creditors, casting Mr. McKinley as a debtor unable to pay his obligations and therefore an unworthy borrower who should not be lent money.

6. Indeed, Mr. McKinley was denied credit on at least one occasion and fully expects to be denied for his request for a home loan now under review.

**Statement of Jurisdiction and Venue**

7.      This Court has original subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1681 et. seq., The Fair Credit Reporting Act ("FCRA"), which permits consumers to file suit in the courts of their respective states.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**Applicable Statutory Law**

9. The FCRA's requirements apply to any Credit Reporting Agency ("CRA"), which Section 603(f) defines as:

> "[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."
>
> 15 U.S.C. § 1681a(f).

10. FCRA Section 603(d) defines a "consumer report" as:

> "[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under Section 604."
>
> 15 U.S.C. § 1681a(d).

11. CRAs that sell consumer reports must comply with the FCRA. FCRA Section 607(b), 15 U.S.C. § 1681e(b), requires a CRA to follow reasonable procedures

3

to assure the maximum possible accuracy of consumer report information, including assuring that only information pertaining to the consumer at issue is contained in his or her report.

12. Section 611 of the FCRA, 15 U.S.C. § 1681i, requires a CRA upon notice of disputed information to conduct a reasonable reinvestigation to determine the accuracy of information disputed by a consumer who is the subject of a report.

    a. The same section requires that notice of the reinvestigation be promptly provided to the furnisher of the credit information.

    b. If after any reinvestigation an item is found to be inaccurate or cannot be verified, the CRA shall promptly delete that item from the file of the consumer.

13. Furnishers of information to CRAs must also comply with certain aspects of the Act. Section 623 of the FCRA, 15 U.S.C. § 1681s-2, addresses the duties of persons who furnish information to the CRAs. This section of the Act prohibits a furnisher from reporting any information to a CRA if the person knows or has reasonable cause to believe that the information is inaccurate.

## Parties

14. Plaintiff is an adult resident of Minnesota.

15. Defendant Equifax Information Services, Inc. is a foreign consumer reporting agency registered in the State of Georgia with a service of process address listed as 2345 Rice Street, Suite 230, Roseville, Minnesota.

16. Defendant Trans Union, LLC is a foreign consumer reporting agency registered in the State of Delaware with a service of process address listed as 2345 Rice Street, Suite 230, Roseville, Minnesota.

17. Defendant Barclays Bank Inc. is a foreign corporation and a furnisher of consumer data to major CRAs. According to the FDIC, the bank also does business under the assumed name Barclaycard US and has a registered address listed as 2345 Rice Street, Suite 230, Roseville, Minnesota.

18. Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendants all conducted business in the State of Minnesota and in the County of Hennepin.

## Facts Common to All Claims

19. Plaintiff is an individual "consumer" as defined by 15 U.S.C. § 1679a(1) and § 1681a(c).

20. The Defendant CRAs are "consumer reporting agencies" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f) because the companies are in the business of assembling and analyzing consumer information before selling consumer reports to third parties.

21. Each of the Defendant CRAs prepared and issued consumer reports concerning Plaintiff that included false and inaccurate information, including that Plaintiff was responsible for a charged off debt pertaining to a Barclays credit card.

22. Various individuals seeking to lend to Plaintiff consulted consumer reports furnished by Defendants containing the false information at issue.

5

23. The direct result of Defendants' issuance of consumer reports to potential lenders containing the false information at issue, including information not reasonably verified, has been significant damage to the perceived reputation of Plaintiff and Plaintiff's ability to borrow money and conduct commerce.

24. Specifically, Defendant's false reports have to date prevented Plaintiff from obtaining a credit card and even delayed his purchasing of a home.

25. As a direct result of Defendant's conduct, Plaintiff has suffered from increased stress, anger, frustration, anxiety and, the loss of the ability to borrow money on favorable terms and thereby loss of a means of improving his social and economic position.

## Facts Regarding Violation of Section 607(b) of the FCRA
## 15 U.S.C. § 1681e(b)

26. Section 607(b) of the FCRA, 15 U.S.C. 1681e(b) expressly requires a CRA to follow reasonable procedures to assure the maximum possible accuracy of consumer report information, including that only information pertaining to the consumer at issue is contained in his or her report.

   a. Defendant, however, routinely furnishes consumer reports containing adverse information about accounts for which the subject of the report is merely an authorized user with no liability for the account in question.

   b. Because the subject of the report has no liability, lenders do not typically require the authorized user's verification or authorization before issuing a card in the authorized user's name.

6

    c. Thus, there is not a process in place to assure that an authorized user consents to issuance of a card in his or her name prior to said issuance.

    d. Under such circumstances there is a high likelihood of errors pertaining to alleged authorized users.

    e. Despite this, the Defendant CRAs allow furnishers to report information, including debts, to the consumer files of authorized users.

    f. In the present matter Mr. McKinley had no knowledge of the issuance of a card in his name and defendant Barclays did nothing to assure Mr. McKinley authorized the card in question.

    g. Despite this, defendant Barclays furnished negative information to the CRA defendants about Plaintiff. The CRA defendants, lacking reasonable procedures to assure such false information is not added to a consumer's file, in turn added the false information to Plaintiff's consumer file and thereafter furnished the same to Plaintiff's potential creditors, causing Plaintiff to be cast in a negative light with regard to his payments of debts.

27. As a direct result of Defendant failing to enact the reasonable procedures to assure maximum accuracy, Plaintiff's consumer files contained false information not relating to Plaintiff and the CRAs informed Plaintiff's potential creditors that Plaintiff was at higher risk for nonpayment of debts and therefore an undesirable credit risk.

28. Similarly, as a further result of Defendants' failure to fulfill their statutory duty, Plaintiff suffered personal financial loss and loss of standing in the community.

29. Plaintiff was further harmed by incurring legal and professional fees in consulting with various experts regarding the course of action for correcting the error at issue.

30. Finally, Plaintiff suffered from loss of personal and professional time as a direct result of each defendant CRAs' refusal to remove the false and defamatory information and each company's refusal to comply with its statutory duties.

## Facts Regarding Violation of Section 611 of the FCRA
## 15 U.S.C. §1681i

31. Section 611 of the FCRA, 15 U.S.C. § 1681i, requires a CRA upon notice of disputed information to conduct a reasonable reinvestigation to determine the accuracy of the disputed information.

32. Plaintiff submitted numerous disputes and notices of the false information contained in his report, including valid requests for reinvestigation sent to the addresses listed by the CRA defendants for receipt of such notices and a letter sent to Barclays at its address listed for receipt of such disputes.

33. Specifically, Plaintiff sent all Defendants such notices on August 10, 2020.

34. In response Plaintiff received notice that the information contained was verified as accurate and that no information would be removed from his consumer files. Thus, Plaintiff was informed that the CRAs would continue to report that Mr. McKinley was responsible for the debt in question.

35. As a direct result of Defendant Barclays failing to correct the inaccurate information contained in Plaintiff's consumer files, the CRAs informed Plaintiff's potential creditors that Plaintiff was at higher risk for nonpayment of debts and therefore an undesirable credit risk.

36. Similarly, as a further result of Defendant Barcalys' failure to fulfill its statutory duty, Plaintiff suffered personal financial loss and loss of standing in the community.

37. Plaintiff was further harmed by incurring legal and professional fees in consulting with various experts regarding the course of action for correcting the errors.

38. Finally, Plaintiff suffered from loss of personal and professional time as a direct result of each Defendant CRA's refusal to remove the false and defamatory information and each company's refusal to comply with its statutory duties.

### Facts Regarding Violation of Section 623 of the FCRA
### 15 U.S.C. §1681s-2

39. Section 623 of the FCRA, 15 U.S.C. § 1681s-2, prohibits a furnisher of information to a CRA from furnishing any information relating to a consumer to any CRA if the person knows or has reasonable cause to believe that the information is inaccurate.

40. Plaintiff submitted numerous disputes and notices regarding the false information contained in his report, including valid requests for reinvestigation sent to the addresses listed by the CRA defendants for receipt of such notices and a letter sent to Barclays at its address listed for receipt of such disputes.

41. Specifically, Plaintiff sent all Defendants such notices on August 10, 2020.

42. In addition to Plaintiff directly informing Barclays of the inaccuracy of the information the bank was furnishing, each of the CRAs also informed the Barclays of the same dispute.

43. In response the Defendant failed to conduct a reasonable reinvestigation and instead verified the information as accurate without regard to truth.

44. The Defendant's verification was communicated to each of the CRA defendants, which in turn parroted verification of the false information without conducting any investigation of their own and without consulting any additional information.

45. As a direct result of Barclays' failure to correct the inaccurate information contained in Plaintiff's consumer files, the CRAs informed Plaintiff's potential creditors that Plaintiff was at higher risk for nonpayment of debts and therefore an undesirable credit risk.

46. Similarly, as a further result of Defendant's failure to fulfill its statutory duty, Plaintiff suffered personal financial loss and loss of standing in the community.

47. Plaintiff was further harmed by incurring legal and professional fees in consulting with various experts regarding the course of action for correcting the errors.

48. Finally, Plaintiff suffered from loss of personal and professional time as a direct result of Barclays' improper refusal to correct the false and defamatory information it furnished about Plaintiff.

## FIRST COUNT
### Willful Noncompliance with the FCRA

(Against All Defendants)

49. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50. The Defendant CRAs willfully failed to comply with the requirements of FCRA, including but not limited to:

    a. failing to comply with the requirements of Section 607(b), 15 USC § 1681e(b), in assuring consumer reports are prepared with maximum possible accuracy;

    b. failing to comply with the requirements of Section 611, 15 USC § 1681i, in failing to conduct a reinvestigation of the disputed information;

51. Barclays willfully failed to comply with the requirements of the FCRA, including but not limited to:

    a. failing to comply with the requirements of Section 623 including a) reporting information with actual knowledge of errors and b) continuing to report false information after notice from the consumer that the information was false.

27. As a result of Defendants' failure to comply with the requirements of FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, interference with his normal and usual activities, emotional distress, anger, frustration, humiliation, anxiety, fear, worry, and related health problems, for which Plaintiff seeks damages in an amount to be determined by the jury.

11

28. Plaintiff requests attorney's fees pursuant to 15 USC § 1681n(a).

## SECOND COUNT

### Negligent Noncompliance with the FCRA

(Against All Defendants)

52. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

22. Defendant negligently failed to comply with the requirements of the FCRA, including but not limited to:

   a. failing to comply with the requirements of Section 607(b), 15 USC § 1681e(b), in assuring consumer reports are prepared with maximum possible accuracy;

   b. failing to comply with the requirements of Section 611, 15 USC § 1681i, in failing to conduct a reinvestigation of the disputed information;

53. Barclays negligently failed to comply with the requirements of FCRA, including but not limited to:

   a. failing to comply with the requirements of Section 623 including a) reporting information with actual knowledge of errors and b) continuing to report false information after notice from the consumer that the information was false.

54. As a result of Defendant's failure to comply with the requirements of FCRA, Plaintiff and all potential class members have suffered, and continue to suffer, actual damages, including economic loss, lost opportunity to receive credit,

12

damage to reputation, invasion of privacy, interference with normal and usual activities, emotional distress, anger, frustration, humiliation, anxiety, fear, worry, and related health problems, for which Plaintiff and the class members seek damages in an amount to be determined by a jury.

24. Plaintiff requests attorney's fees pursuant to 15 USC § 1681o(a).

## Prayer for Relief

WHEREFORE, Plaintiff, by and through his attorney, respectfully prays for judgment in favor of Plaintiff and against Defendant as follows:

a. all actual compensatory damages suffered;

b. statutory damages in an amount up to $1,000.00 per violation per plaintiff, pursuant to 15 U.S.C. §1681n;

d. injunctive relief prohibiting such conduct in the future;

e. reasonable attorney's fees, litigation expenses, and cost of suit; and

f. any other relief deemed appropriate by this Honorable Court.

Dated: September 11, 2020      Respectfully Submitted,

By: s/David J.S. Madgett
MADGETT & KlEIN, PLLC
Atty. Reg. No. 0390494
1161 E Wayzata Blvd, Suite 314
Wayzata, MN 55391
(612) 470-6529
Dmadgett@madgettlaw.com

ATTORNEY FOR PLAINTIFF

## Acknowledgement

13

Plaintiff acknowledges that, pursuant to Minn. Stat. Sec. 549.21 sub. 2, the Court in its discretion may award costs, disbursements, reasonable attorney's fees and witness fees to the parties against whom costs, disbursements, reasonable attorney's fees and witness fees were charged in bad faith.

Dated: September 11, 2020            By: /s/          David J.S. Madgett